UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAHEEL BEHNAM POTRIS,

                      Plaintiff,

v.

SECRETARY OF DEPARTMENT
OF HOMELAND SECURITY,

                      Defendant.

Case No. 2:15-cv-11309
Judge Paul D. Borman
Magistrate Judge Anthony P. Patti

_____/

## REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S APPLICATION FOR FEES, COSTS AND OTHER EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT (DE 9)

**I.**    **RECOMMENDATION:** The Court should deny Plaintiff's application for fees, costs, and other expenses under the Equal Access to Justice Act. (DE 9.)

**II.**    **REPORT:**

    **A.**    **Factual Background**

Raheel Behnam Potris became a permanent resident of the United States of America on January 14, 2008. (DE 1 at 3 ¶ 5.) On or about November 6, 2012, she filed a U.S. Citizenship Application (Form N-400) with the United States Citizenship and Immigration Service (USCIS). (DE 11-1 at 2 ¶ 4.) Ms. Potris was interviewed on February 28, 2013 by the USCIS, Detroit District Office. (DE 1 at

3 ¶ 5.)  Thus, a determination on her application was due on or about June 28, 2013.  (DE 9 at 3.)[1]

Ms. Potris's case was referred to the USCIS Fraud Detection and National Security (FDNS) unit on March 1, 2013, where it remained until approximately March 11, 2014.  (DE 11-1 at 2 ¶¶ 7-8.)  On March 17, 2014, her case was received by the Adjudications Unit.  (DE 11-1 at 2 ¶ 10.)  On July 18, 2014, it was discovered that Ms. Potris's fingerprints had expired.  DE 11-1 at 3 ¶ 11.  She was fingerprinted on December 15, 2014.  DE 11-1 at 3 ¶ 12.

## B.   Procedural History

Nearly four months later, on April 8, 2015, Plaintiff, via counsel, filed a petition for naturalization on the basis that her application "has been pending for over 120 days thus vesting jurisdiction with this court under 8 U.S.C. § 1447[,]" and alleging that Defendant is in violation of the Administrative Procedure Act (APA).  DE 1 at 5 ¶¶ 13, 15.  Plaintiff's complaint sought three specific forms of

---

[1] "A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2."  8 C.F.R. § 335.3.  "If there is a failure to make a determination under [8 U.S.C. §] 1446 . . . before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."  8 U.S.C. § 1447(b) ("Request for hearing before district court").

relief:  assume jurisdiction over this case and naturalize the Plaintiff pursuant to 8

U.S.C. § 1447(b); award Plaintiff reasonable attorney fees; and alternatively,

remand to USCIS with instructions to adjudicate the application within a time

certain.  (DE 1 at 5-6 ¶¶ A-C.)

Beginning May 19, 2015, through June 12, 2015, counsel for the parties

exchanged electronic mail regarding the terms of a stipulated order.  (DE 11-2.)  In

pertinent part, these e-mails consisted of the following communications:

> Defense counsel (5/19/15):  "USCIS has reviewed the complaint and
> is willing to adjudicate Ms. Potris' application as you request.  Please
> advise whether I have your consent to submit the attached stipulated
> order remanding the matter to USCIS to the court.
>
>     *        *        *
>
> Plaintiff's counsel (5/27/15):  "We can agree to the remand within a
> time specified because that is the relief we requested in our complaint
> so basically, your client is agreeing to grant the relief we requested.
> We cannot agree to the mootness because at this point, only the court
> has jurisdiction.  We cannot agree to bear our costs and attorneys fees.

(DE 11-2.)

On June 15, 2015, Judge Borman entered a stipulated order remanding the

matter to U.S. Citizenship and Immigration Services.  In its entirety, it provides:

> Upon the stipulation of the parties, through their respective counsel,
> this action is remanded, without prejudice, to U.S. Citizenship and
> Immigration Services *for adjudication of Plaintiff's naturalization*
> *application* within twenty-one (21) days of entry of this order. The
> issue of attorney's fees and costs are preserved by the parties.

(DE 8) (emphasis added).

The following day, on June 16, 2015, Plaintiff's naturalization application was approved by the USCIS.  DE 11-1 at 3 ¶ 14.  Her "Notice of Naturalization Oath Ceremony" is dated June 18, 2015, and it notified her to appear on Monday, July 6, 2015.  (DE 9-1.)  Plaintiff was naturalized on that date.  (DE 9 at 4.)

### C.    Instant Motion

Currently before the Court is Plaintiff's July 13, 2015 application for fees, costs, and other expenses under the Equal Access to Justice Act (EAJA).  (DE 9.)  In the instant motion, Plaintiff seeks an award of EAJA fees in the amount of $2,614.79, comprised of $2,136.00 for attorney fees, $450.00 in filing fees, and $28.79 in certified mail costs.  (DE 9 at 14.)  The government has filed a response, and Plaintiff has filed a reply.  (DEs 11, 13.)

Judge Borman has referred this motion to me for report and recommendation.  (DE 10.)  On August 11, 2015, a hearing on this matter was noticed for September 22, 2015.  (DE 12.)[2]  On the date set for hearing, attorneys Caridad Pastor Cardinale and Assistant United States Attorney Jennifer L. Newby appeared.

_____

[2] On September 17, 2015, Plaintiff filed a statement of resolved and unresolved issues.  (DE 14.)  As framed by the statement of resolved and unresolved issues, those which remain to be decided are:  (1) Whether the Plaintiff is entitled to Attorneys Fees and Costs pursuant to EAJA, and (2) What is the appropriate formula for calculating the Attorneys Fees and Costs.  (DE 14 at 2.)

### D.     The Equal Access to Justice Act (EAJA)

"In separate provisions, the EAJA allows a prevailing party other than the United States to recover fees and expenses incurred 'in any civil action' brought by or against the United States, 28 U.S.C. § 2412(d)(1)(A), or in an 'adversary adjudication' conducted by an agency of the United States, 5 U.S.C. § 504." *Tri-State Steel Const. Co., Inc. v. Herman*, 164 F.3d 973, 977 (6th Cir. 1999).  Plaintiff filed the instant request pursuant to 28 U.S.C. § 2412(d).  (DE 9 at 1.)

"Under the EAJA, 'a court shall award to a *prevailing party*' in a civil action against the United States 'fees and other expenses ... unless the court finds that the position of the United States was *substantially justified* or that *special circumstances* make an award unjust.'"  *Glenn v. Commissioner of Social Sec.*, 763 F.3d 494, 498 (6th Cir. 2014) (quoting 28 U.S.C. § 2412(d)(1)(A); *DeLong v. Commissioner of Social Sec. Admin.,* 748 F.3d 723, 725 (6th Cir. 2014)) (emphasis added).  In other words, under 28 U.S.C. § 2412(d)(1)(A), an award of fees requires that 1) the plaintiff was the prevailing party, 2) the government's position was not substantially justified, and 3) no special circumstances make an award of fees unjust.

"The EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign

immunity." *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991).  "Any such waiver must be strictly construed in favor of the United States."  *Id*.

**E.    The Court Should Deny Plaintiff's Application.**

**1.    Plaintiff is not entitled to an award of attorney fees under the EAJA.**

**a.    She is not a prevailing party as contemplated by 28 U.S.C. § 2412(d)(1)(A).**

As a threshold matter, the Court must first consider whether Plaintiff is a prevailing party as contemplated by 28 U.S.C. § 2412(d)(1)(A).  "'Prevailing party' is not some newfangled legal term invented for use in late-20[th]-century fee-shifting statutes."  *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 610 (2001) (Scalia, J., concurring). According to Black's Law Dictionary, a "prevailing party" is defined as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded," which further notes that,  "in certain cases, the court will award attorney's fees to the prevailing party," which is also termed the "*successful party*."  Black's Law Dictionary 1298 (10th ed. 2014).

The seminal case on this issue is *Buckhannon*, in which the Supreme Court held that "prevailing party" *does not include* "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in

6

the defendant's conduct." *Buckhannon*, 532 U.S. at 600.   In that case, the court began by recognizing that "[i]n the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Id*. at 602.  However, after acknowledging that Congress has authorized attorney fees awards to the "prevailing party" in numerous statutes and noting that "prevailing party" is a legal term of art, the court pointed out that "[i]n addition to *judgments on the merits*, we have held that settlement agreements enforced through a *consent decree* may serve as the basis for an award of attorney's fees."  *Id*. at 602-604 (emphasis added).  By contrast, the Supreme Court stated that "the '*catalyst theory*' falls on the other side of the line from these examples."  *Id*. at 605 (emphasis added).  The "catalyst theory" refers to "[a] defendant's voluntary change in conduct, [which] although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change.  Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties."  *Id.* (emphasis in original).

> ### i.    The June 15, 2015 stipulated order remanding matter to USCIS is not a judgment on the merits.

It is clear that the Judge Borman's June 15, 2015 stipulated order remanding this matter to USCIS (DE 8) is not a judgment on the merits.  A *judgment on the*

*merits* "completely disposes of the underlying cause of action… or determines that the plaintiff has no cause of action." *Harper Plastics Co. v. Amoco Chems. Corp.,* 657 F.2d 939, 943 (7th Cir. 1981).  Here, the Court made no such determinations. In fact, the stipulated order at issue expressly states that the case is being remanded "for adjudication" of the plaintiff's naturalization application; the order itself does not actually *grant* the application. Ordering the USCIS to merely make a decision within a certain timeframe, without directing the outcome of that decision, is nothing more than a remand to a lower tribunal for additional administrative proceedings. In this case, that remand resulted from an *agreement*, not from judicial deliberation. "The net effect is merely to return the parties to the forum where the plaintiff initially elected to have his case tried." *F & L Drug Co. v. American Central Ins. Co.,* 200 F. Supp. 718, 724 (D. Conn. 1961). As such, it is "in no sense a final judgment on the merits." *Id.*

Moreover, the stipulated order in question states that "this action is remanded, *without prejudice* . . . ."  (emphasis added).  Any dismissal order that is entered without prejudice "ordinarily does not preclude a subsequent action on the same claim," and thus has no *res judicata* effect because it is not a judgment on the merits.  18 *More's Federal Practice* 3D, §131.30[3][a] (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384. 396 (1990) ("[D]ismissal…'without prejudice' is a

8

dismissal that does not 'operate as an adjudication on the merits.'"); *see also,* Fed. R. Civ. P. 41(b)).

### ii.     The June 15, 2015 stipulated order remanding matter to USCIS is not a consent decree

What is less clear is whether the stipulated remand order is a consent decree as contemplated by *Buckhannon*, 532 U.S. at 600. Here, the Court recognizes that the dictionary definition of "consent decree" is not terribly helpful: "A court decree that all parties agree to. – Also termed consent order." Black's Law Dictionary 498 (10th ed. 2014). Therefore, at the conclusion of the September 22, 2015 hearing, I invited counsel for the parties to submit supplemental briefs, no longer than six (6) pages in length, which discuss whether the June 15, 2015 stipulated order remanding matter to USCIS (DE 8) is a "consent decree" and, by extension, to identify cases involving remand and prevailing party status. The parties did so on October 2, 2015. (DEs 15, 16.)

As to what constitutes a consent decree, each of the parties relies upon the Supreme Court's decision in *United States v. Armour & Co.*, 402 U.S. 673 (1971), which instructs that:

> Consent decrees are entered into by parties to a case *after careful negotiation* has produced agreement on their precise terms. The parties *waive their right to litigate* the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of

risk, the parties *each give up something* they might have won had they
proceeded with the litigation.

*Armour*, 402 U.S. at 681 (emphasis added).  The Court should conclude that its
June 15, 2015 stipulated order remanding the case to USCIS (DE 8) is not a
consent decree.  Notwithstanding the fact that Plaintiff alleges the parties engaged
in "careful negotiation"  (see DE 16 at 2-3), the nine (9) electronic mails dated
May 19-20, May 26-27, June 9 and June 12, which are offered as evidence of the
negotiations, reveal simple discourse regarding the possible addition of "with
prejudice" language, reservation of the issue of fees and costs, whether Plaintiff's
complaint is mooted by USCIS's willingness to adjudicate Plaintiff's application,
and a time-frame for adjudication.  (*See* DE 11-2, DE 16 at 2.)  Here, it is
noteworthy that, according to the Government, "Plaintiff did not negotiate the
terms of the remand or the timeframe, nor were they set by the Court."  (DE 15 at
2.)  Instead, the timeframe set for completion of the administrative process was
proposed by the Government, and accepted wholeheartedly by the Plaintiff. (DE 15
at 12, DE 11-2, DE 11-3.)

Second, Plaintiff herself admits that "the court remanded the case back to the
Defendants to provide the exact relief that the Plaintiff was requesting."  (DE 16 at
3.)  Therefore, the agreement lacked compromise; Plaintiff did not give up
something she might have won if she had proceeded with the litigation and been
successful on her complaint.  *See Armour*, 402 U.S. at 681; *see also*, *Lorain*

10

*NAACP v. Lorain Board of Education*, 979 F.2d 1141, 1148 (6th Cir. 1992) (A consent decree "is at once 'a voluntary settlement agreement which could be fully effective without judicial intervention' and 'a final judicial order … plac[ing] the power and prestige of the court behind the compromise struck by the parties.'") (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983), *Vulcan, Inc. v. Fordees Corporation*, 658 F.2d 1106, 1111 (6th Cir. 1981) ("negotiations for a consent decree invariably call for reciprocal compromises each party relinquishes something it might have won had it proceeded with the litigation.") (citation omitted)).  Nor is there a waiver of the plaintiff's right to litigate the matter further, if necessary.

I also note Plaintiff's observation that "the stipulation for remand of the Plaintiff's case to USCIS was within the jurisdiction of this Court."  (DE 16 at 4.) The significance of the Court's jurisdiction merits some comment here.  Four days after the parties filed their supplemental briefs, the Sixth Circuit issued its decision in *Pedreira v. Sunrise Children's Services, Inc.*, 802 F.3d 865 (2015).  In *Pedreira*, the Sixth Circuit considered whether "the district court's incorporation of the settlement agreement into its dismissal order converted the order into a consent decree[.]" *Pedreira*, 802 F.3d at 871.  The court explained:

> "A consent decree is essentially a settlement agreement subject to continued judicial policing." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir.1983).  Consent decrees typically have two key attributes that make them different from private settlements.  First, when a court

11

enters a consent decree, it retains jurisdiction to enforce the decree. *Id*. In contrast, the parties to a private settlement typically must bring another suit (for breach of contract) to enforce it. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Second, a consent decree puts "the power and prestige of the court behind the compromise struck by the parties." *Williams*, 720 F.2d at 920. The same is not true of a dismissal order that does not incorporate the parties' terms.

*Pedreira*, 802 F.3d at 871 (emphasis added). The court then observed, "Both of these key attributes are present here: the court expressly retained jurisdiction to enforce compliance with the settlement's terms; and by incorporating the settlement into the court's own dismissal order, the court gave its imprimatur to the settlement's terms." *Id*.

Here, Plaintiff admits that "the Court transferred its jurisdiction to USCIS. . . . This Court did not retain jurisdiction in this matter." (DE 16 at 6.) This admission and the language of the order itself demonstrate that the Court did not retain jurisdiction. *Compare*, *Marshall v. Commissioner of Social Security*, 444 F.3d 837, 841 (6th Cir. 2006) (a social security case which involved a motion for a Sentence 6 remand, reversed a district court's ruling that the plaintiff was not a "prevailing party" under the EAJA, and in which the Sixth Circuit reasoned that: "[b]y granting Marshall's 'motion to affirm decision on remand,' the district court's opinion acknowledges that jurisdiction was retained."),[3] *Almudallal v.*

---

[3] I note that social security remand cases are somewhat of a "different beast." "No holding of this Court has ever denied prevailing-party status (under §

*USCIS*, No. 3:07-cv-2040 (N.D. Ohio May 5, 2008) ("a lawsuit under Section 1447(b) allows the USCIS to maintain jurisdiction over the naturalization application and the order for remand does not constitute a final judgment[,]" "the Court remanded with instructions to allow the process to be completed[,]" and the order did not confer prevailing party status upon Plaintiff.). Likewise, there is nothing in the order to suggest that this Court put its "power and prestige . . . behind the compromise struck by the parties." *Williams*, 720 F.2d at 920.

Moreover, the Sixth Circuit instructed in *Pedreira* that "Before entering a consent decree," the district court must: (1) "determine, among other things, that the agreement is 'fair, adequate, and reasonable, as well as consistent with the public interest[,]'" and must (2) "allow anyone affected by the decree to 'present evidence and have its objections heard[.]'" *Pedreira*, 802 F.3d at 872. None of this occurred here. Far from being a "consent decree" of the ilk one might see in a school desegregation or environmental clean-up case, in this instant matter, the parties agreed to a simple remand order.

Therefore, in accordance with *Armour* and *Pedreira*, the Court should conclude that its June 15, 2015 stipulated order remanding case to USCIS (DE 8) is

---

2412(d)(1)(B)) to a plaintiff who won a remand order pursuant to sentence four of § 405(g)." <u>Shalala v. Schaefer</u>, 509 U.S. 292, 300 (1993); *see also*, *Turner v. Commissioner of Soc. Sec.*, 680 F.3d 721 (6th Cir. 2012). "[A] district court retains jurisdiction when remanding a social security claimant's case pursuant to sentence six." <u>Marshall</u>, 444 F.3d at 841.

not a consent decree, because the agreement lacked compromise and the Court has

neither retained jurisdiction nor put its "power and prestige" behind it.

> ### iii.   Instead, the instant lawsuit brought about a voluntary change in Defendant's conduct and, thus, lacks the necessary judicial imprimatur to conclude that Plaintiff is entitled to "prevailing party" status under the EAJA.

The case at bar amounts to a *mere* "catalyst" for Defendant's voluntary

change in conduct and lacks the judicial imprimatur contemplated in *Buckhannon*,

532 U.S. at 605.  My decision is informed by *Al-Maleki v. Holder*, 558 F.3d 1200,

1206 (10th Cir. 2009), a case in which the district court had granted the parties'

joint motion for remand.  In concluding that "[t]he order is a judgment on the

merits that conferred prevailing party status upon Al–Maleki[,]" the 10th Circuit

explained:

> On the basis of the parties' stipulations, the district court resolved Al–Maleki's claims in his favor, concluding he was entitled to be naturalized and ordering USCIS to administer the oath on a date certain. The order, therefore, also provided the judicial imprimatur which is indispensable to the prevailing party determination. The order placed the weight of judicial authority behind USCIS's stipulation that Al–Maleki was entitled to be naturalized by imposing a *judicially enforceable* obligation on USCIS to naturalize Al–Maleki by a date certain. If USCIS failed to comply with the order, Al–Maleki could petition for relief in district court.

*Al-Maleki*, 558 F.3d at 1206 (emphasis in original).  By comparison, the stipulated

order to remand in Ms. Potris's case required the USCIS to *adjudicate* her

naturalization application within a certain period.  (DE 8 at 1.)  It does not

14

"conclude" that Ms. Potris "is entitled to be naturalized" and does not order the USCIS "to administer the oath." Rather, the stipulated remand order at issue in Plaintiff's case is more like the order at issue in *Aronov v. Napolitano*, 562 F.3d 84 (1st Cir. 2009), as it ". . . did not resolve a dispute between the parties, it merely returned jurisdiction to the agency to allow the parties to carry out their agreement." *Aronov*, 562 F.3d at 92; *see also*, *Othman v. Chertoff*, 309 F.App'x 792, 794 (5th Cir. Dec. 23, 2008) ("The district court entered neither an enforceable judgment nor a consent decree. Instead, the court simply remanded the action to CIS and ordered that a determination be made by January 25, 2008.  This action lacked the 'judicial imprimatur' necessary to confer prevailing-party status on Othman.").

A conclusion that the stipulated remand order at issue here lacks sufficient judicial imprimatur is also buttressed by several cases from this district.  For example, in *Mansour v. Johnson*, No. 14-14139 (E.D. Mich. May 8, 2015) (Levy, J.) – a case in which the petitioner is the current plaintiff's husband – the Court entered both a judgment and an order granting defendant's motion to remand Plaintiff's application for naturalization to USCIS for re-adjudication.  In denying the motion for attorney fees, Judge Levy reasoned, "it was an order granting defendants' request to voluntarily give plaintiff the very relief he sought."  Also, in *Chebli v. Chertoff*, No. 07-10750, 2007 WL 2571967 (E.D. Mich. Sept. 4, 2007)

(Friedman, J.), the Court entered an opinion and order denying Defendant's motion
to dismiss and order scheduling a § 1447(b) hearing, followed by an order of
dismissal without prejudice.  Thereafter, in denying Plaintiff's motion for costs and
attorney's fees and other expenses, the Court reasoned:  "the parties negotiated a
private settlement that, presumably, included the completion of the stalled
background check and the favorable processing of plaintiff's naturalization
application.  Upon being informed that the matter was resolved, the court issued an
order dismissing the complaint without prejudice."  *Chebli v. Chertoff*, No. 07-
10750, 2008 WL 203317 (E.D. Mich. Feb. 4, 2008) (Friedman, J.)  Finally, in
*DeLeon v. City of Ecorse*, No. 05-70187, 2007 WL 2259331, *4 (E.D. Mich. Aug.
3, 2007) (Cleland, J.), the Court entered an order dismissing claims and retaining
jurisdiction for attorney fees and costs.  In denying Plaintiff's motion for attorney
fees and costs, the Court reasoned:  "the settlement terms incorporated into the
court's order granted no substantive relief, but rather, merely submitted Plaintiff's
claims to arbitration. The court is not convinced that such terms constitute relief on
the merits of Plaintiff's claims which materially alters the legal relationship of the
parties. Nor does the fact that this court retained jurisdiction for the limited
purpose of determining a motion for attorney fees and costs establish Plaintiff as a
prevailing party."

16

Plaintiff's case warrants a similar conclusion.  As in *Mansour*, Defendant here voluntarily gave Plaintiff the alternative relief she sought – remand with instructions to adjudicate within a time certain.  *See* DE 1 at 6 ¶ C.  Moreover, as in *DeLeon*, here, the parties' legal relationship was not materially altered by the stipulated order to remand.  Thus, the stipulated consent order does not have the necessary or sufficient judicial imprimatur to render Plaintiff a "prevailing party" as contemplated by the EAJA.

In sum, this lawsuit amounts to a *mere* "catalyst" for Defendant's voluntary change in conduct and lacks the judicial imprimatur contemplated in *Buckhannon*, 532 U.S. at 605.  Furthermore, even if the Court finds that the issue of whether its stipulated order for remand "has sufficient judicial imprimatur to make Plaintiff a prevailing party" is a close call, I agree with the Government that the Court should find in the Government's favor.  DE 15 at 5-6.  As noted above, "The EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity.  Any such waiver must be strictly construed in favor of the United States."  *Ardestani*, 502 U.S. at 137 (citations omitted).

> **b.** **The Court need not address the issues of whether the Government's position was substantially justified, whether special circumstances make an award unjust, or whether Plaintiff is entitled to attorney fees in excess of the statutory maximum.**

Plaintiff also argues that the Government's position was not substantially justified, no special circumstances would make an award of fees unjust, and her counsel "is entitled to fees in excess of the statutory hourly rate . . . ." (DE 9 at 8-10, 11-13.)  The Government has responded to two of these arguments.  (DE 11 at 13-14, 15-17.)

I am sympathetic to Plaintiff's position in reply, where she alleges that "Defendants have a pattern and practice of failing to adjudicate Naturalization cases within the statutory 120 days, only to adjudicate these Naturalization cases within several weeks after a Federal action is filed[,]" citing six cases from the Eastern District,[4] in addition to *Mansour*, Case No. 14-14139 (E.D. Mich.),[5] where

---

[4] Plaintiff specifically cites *Awad v. Chertoff*, No. 2:06-14412 (E.D. Mich. 2006); *Khalife v. Chertoff*, No. 2:06-cv-14887 (E.D. Mich. 2006); *El Amm v. Chertoff*, No. 2:08-cv-10293 (E.D. Mich. 2008); *Ilamoud v. Chertoff*, No. 2:08-cv-10946 (E.D. Mich. 2008); *Guerrero v. Napolitano*, No. 2:09-cv-13062 (E.D. Mich. 2009); and *Aoun v. Napolitano*, No. 2:11-cv-11298 (E.D. Mich. 2011).  (DE 13 at 9.)

[5] Plaintiff's supplemental brief states that "[b]y agreeing to the remand, the Plaintiff was trying to avoid the result in her husband's case in which fees and costs were denied because the Judge felt that by not agreeing to a remand, the Plaintiff's counsel frustrated the process."  DE 16 at 6.  In her order denying Mansour's motion for attorney fees, Judge Levy acknowledged that the EAJA's purpose "is not to encourage those attorneys to frustrate the settlement process, delay the relief that might otherwise be afforded their clients, and require the Court to enter an

18

the Plaintiffs were allegedly naturalized within 6 to 12 weeks of the filing of the

complaint.  (*See* DE 13 at 8-10.)  It must be frustrating when, as Plaintiff argues,

"Defendants are always able to naturalize federal Plaintiffs within a few weeks of

the filing of the Complaint despite 'investigations' of fraud, FBI security checks,

etc."  According to Plaintiff, this pattern and practice results in costs *in addition to*

the $680 in fees for an N-400 filing.  (DE 13 at 10.)

     Nonetheless, if the Court agrees with my foregoing recommendation that

Plaintiff is not a prevailing party as contemplated by 28 U.S.C. § 2412(d)(1)(A),

then it need not consider whether the United States' delay in adjudicating

Plaintiff's naturalization application was substantially justified, whether special

circumstances make an award unjust, what is the appropriate formula for

calculating the attorney fees and costs, or whether Plaintiff is entitled to attorney

fees in excess of the statutory maximum under 28 U.S.C. § 2412(d)(2)(A)(ii).

---

order so that plaintiff's counsel may then claim to have represented a prevailing
party."  Case No. 5:14-cv-14139-JEL-RSW (E.D. Mich. May 8, 2015).   Here, I
do not doubt Plaintiff's sincerity in this regard, nor do I endorse a "darned if you
do; darned if you don't" outcome; nonetheless, for the reasons stated elsewhere in
this report, I recommend the Court conclude Plaintiff is not a prevailing party as
contemplated by the EAJA.

### 2. Plaintiff's filing fees and certified mail costs are not compensable under 28 U.S.C. § 1920.

Plaintiff also seeks reimbursement for $478.79 in costs, which is comprised of $450.00 in filing fees and $28.79 for certified mail.  (DE 9 at 14.)  Defendant does not appear to contest the calculation of $478.79 in costs.  (DE 11.)

Although 28 U.S.C. § 2412(d) is the only statute in the instant motion upon which Plaintiff seeks reimbursement, Plaintiff's request for costs likely seeks such relief under 28 U.S.C. § 2412(a)(1), which provides:

> Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to *the prevailing party* in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

28 U.S.C. § 2412(a)(1) (emphasis added).  Thus, a conclusion that Plaintiff here is not a prevailing party is fatal not only to her request for attorney fees but also to her request for costs.

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

/s/Anthony P. Patti
ANTHONY P. PATTI
UNITED STATES MAGISTRATE JUDGE

Dated:  November 20, 2015

21

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 20, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda

Acting Case Manager, in the absence of Michael Williams
